# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

---

DONNA SIMS, *individually and on behalf of all others similarly situated,*

     Plaintiff,

     v.

RECKITT BENCKISER, LLC,

     Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff DONNA SIMS ("Plaintiff SIMS" or "Plaintiff") individually and on behalf of all others similarly situated, by and through her undersigned counsel, hereby brings this Class Action Complaint against Defendant, RECKITT BENCKISER LLC (hereinafter, "RECKITT BENCKISER" or "Defendant"), and allege the following:

## <u>NATURE OF THE ACTION</u>

1. An annual survey conducted from February 2010 to March 2014 of approximately 24,000 American adults revealed that 75 percent of American households used air freshener and room deodorizers.[1] Taking advantage of this demand, Defendant manufactures, markets and sells its Air Wick® aerosol room sprays with false and deceptive labels that misrepresent their actual inability to eliminate odors.

2. As part of its extensive and comprehensive nationwide marketing campaign, Defendant actively promotes the capabilities of Air Wick® aerosol sprays, claiming on the front

---

[1] http://www.statista.com/statistics/284914/usage-of-air-freshener-spray-and-room-deodorizers-in-the-us-trend/ (last accessed 8/7/17).

labels that this product "eliminates odors." But Defendant's aerosol sprays cannot in fact eliminate odors. Instead, the Air Wick® aerosol sprays merely mask odors. By making false, deceptive and misleading statements to consumers, Defendant has deceived millions of consumers into purchasing Air Wick® aerosol sprays.

3.      Plaintiff and the Classes have purchased Air Wick® aerosol sprays in the fragrances listed below:

- Vanilla Indulgence
- Lavender & Chamomile
- Apple Cinnamon Medley
- Fresh Waters
- Magnolia & Cherry Blossom
- Freesia & Jasmine
- Hawai'i Exotic Papaya & Hibiscus Flower
- Any other Air Wick® aerosol room spray with "eliminates odors" on the front label (collectively, the "Products"; individually, the "Product")

4.      At all material times hereto, Plaintiff and the Class have been deceived into purchasing the Products, whose capabilities have been misrepresented by Defendant. Plaintiff and other consumers have been harmed by Defendant's unlawful fraud, which takes advantage of consumers' strong preference for products that actually remove unwanted odors rather than merely mask them.

5.      As shown in **EXHIBIT A**, the claim that Air Wick® aerosol spray eliminates odors is central to Defendant's marketing strategy. The claim is prominently displayed on the front labels of the Products, where it cannot be missed, as well as on Defendant's website. Defendant has unjustly profited in the lucrative market for odor-eliminating products by labeling its Products deceptively and selling them to consumers who sought to purchase products that can actually eliminate unwanted odors, such as smoke, food, mildew, bathroom, and pet odors.

6.      This lawsuit seeks redress for the deceptive manner in which Defendant has marketed and continues to market its Air Wick® aerosol sprays to the general public. Plaintiff

2

brings this proposed consumer class action individually and on behalf of all other persons similarly situated who, from the applicable limitations period up to and including the present (the "Class Period"), purchased Air Wick® aerosol sprays for consumption and not resale.

7.     Plaintiff seek to secure, among other things, monetary damages, punitive damages, equitable and declaratory relief, injunctive relief, restitution, and alternative damages, for similarly situated purchasers, against Defendant, for (1) deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.), (2) Common Law Fraud, and (3) Breach of Express Warranties.

8.     In addition to damages, Plaintiff seeks an Order requiring Defendant to cease packaging, marketing and advertising its Air Wick® aerosol sprays with misleading claims about their odor eliminating capabilities.

9.     Plaintiff expressly does not seek to enforce any state law requirements beyond those established by federal laws and regulations.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

11.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant pursuant to Illinois Statute 735 ILCS 5/2-209.  Defendant conducts substantial business in Illinois, the conduct giving rise to this Complaint took place in Illinois, and Plaintiff SIMS's claims  arise out of Defendant's tortious acts in Illinois.  Additionally, this court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout

Illinois. Defendant has sufficient minimum contacts with Illinois and/or otherwise has intentionally availed itself of the markets in Illinois, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's activity within Illinois is substantial and not isolated.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because Plaintiff SIMS is a resident of this District, a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. § 1391(c)(2). Accordingly, Defendant is subject to personal jurisdiction in this District.

## PARTIES

### *Plaintiff SIMS*

13. Plaintiff DONNA SIMS is, and at all times relevant hereto has been, a citizen of the State of Illinois and a resident of Cook County. On September 14, 2016 Plaintiff SIMS purchased two Air Wick® aerosol sprays for personal consumption within the State of Illinois, from Mariano's located in Cook County. The purchase price was $0.99 for each canister of "Fresh Waters"–scented room spray. Below is a picture of Plaintiff SIMS's purchase:



14.     Plaintiff SIMS was financially injured as a result of Defendant's deceptive conduct because she was attempting to purchase a product that was capable of eliminating odors, which meant that the Air Wick® Products she actually purchased were of no value to her, or much less value than the sum she paid.  At the time of purchase, Plaintiff SIMS did not know that the Products were incapable of eliminating odor, and she would not have purchased them had she known that its "eliminates odors" representations were false.  Plaintiff SIMS relied upon and was reasonably misled by Defendant's mischaracterization of its Products' capabilities. Plaintiff SIMS suffered injury in fact and lost money as a result of Defendant's deceptive, false, and misleading practices as described herein.  She was denied the benefit of her bargain because the Product did not have the advertised capability to eliminate odor as warranted by Defendant, and instead was an entirely different and less-valuable odor masking product.  However, Plaintiff SIMS would be willing to purchase the Products in the future if she is assured that Defendant is accurately representing their capabilities.

5

*Defendant*

15.     Defendant RECKITT BENCKISER LLC is a corporation organized under the laws of Delaware.   Its headquarters and address for service of process is 399 Interpace Parkway, Parsippany NJ 07054-0225.

16.     Defendant RECKITT BENCKISER LLC is a privately held global manufacturer of household cleaning supplies and other consumer chemicals. It has operations in 72 countries and its brands are sold in over 110 countries.   In 2015, Defendant took in £8.874 billion in net revenue.[2]

17.     RECKITT BENCKISER develops, markets and sells a line of household air fresheners under the Air Wick® brand name throughout the United States.   The Products are available at grocery stores, hardware stores, convenience stores, drug stores and other retail outlets throughout the United States, including online retailers such as Amazon.com.

18.     RECKITT BENCKISER owns, manufactures and distributes Air Wick® aerosol products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising of the Air Wick® aerosol sprays at issue in this Complaint. The product label for Air Wick® aerosol sprays, relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents with the "eliminates odors" misrepresentation alleged herein. The Product label was designed to encourage consumers to purchase Air Wick® aerosol sprays and reasonably misled Plaintiff and the Classes into purchasing the Products.

19.     Plaintiff alleges that, at all times relevant herein, RECKITT BENCKISER's subsidiaries, affiliates, and other related entities, as well as its employees, were acting as its agents and/or servants, each acting within the purpose and scope of that agency and employment. Plaintiff

further alleges on information and belief that, at all times relevant herein, the distributors who delivered and sold the Products, as well as their respective employees, also were RECKITT BENCKISER's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment. In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, RECKITT BENCKISER, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that RECKITT BENCKISER participated in the making of such representations by disseminating those misrepresentations and/or causing them to be disseminated.

20.     Whenever reference in this Complaint is made to any act by RECKITT BENCKISER or its subsidiaries, affiliates, distributors, and other related entities, such reference shall be deemed to allege that the principals, officers, directors, employees, agents, and/or representatives of RECKITT BENCKISER committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of RECKITT BENCKISER while actively engaged in the scope of their duties.

## FACTUAL ALLEGATIONS

### Air Freshener Products

21.     Air fresheners introduce fragrance into the air and are used to hide unpleasant-smelling odors.

22.     Air freshener products have grown into a huge business, with residential and commercial consumers. In 2011, the Wall Street Journal reported that air freshener sales reached an estimated $7.77 billion in 2010 and were forecasted by the market research firm Euromonitor

---

[2] http://www.rb.com/media/1598/rb-annual-report-2015_final.pdf.

International to continue to grow.[3]  Air Wick® has been reported as the second most popular brand of air freshener, with a market share of 34.3%.[4]

23.     There are many different kinds of air freshener. The global air fresheners market is segmented into four categories: Aerosol Fresheners (e.g., spray cans), Electric Air Fresheners (e.g., plug-ins), Car Air Fresheners (e.g., car vent clips), and Other Air Fresheners Products (e.g., candles, oils, gels, beads).

24.     Aerosol air fresheners, including Defendant's, use a propellant and fragrance packaged under pressure in a sealed metal or glass container with a valve which is opened by pressing down a button which contains a spray nozzle – the actuator. When the container's valve is opened by pressing the actuator, fragrance is forced through the spray nozzle located inside the actuator to create a mist of droplets containing fragrance.

25.     Commonly, odors can be controlled by five methods:

- Absorption: Absorbents like zeolite, activated charcoal, or silica gel may be used to remove odors.
- Oxidation: ozone, hydrogen peroxide, peroxide; chlorine, chlorate other oxidizing agent can be used to oxidize and remove organic sources of odors from surfaces and, in the case of ozone, from the air as well.
- Air sanitizer: Odors caused by airborne bacterial activity can be removed by air sanitizer that inactivate bacteria.
- Surfactants and soaps.
- Masking: Overwhelming an odor with another odor by any of the means described above.

26.     Air fresheners can only mask odors by introducing new fragrances into the air to overpower the original unpleasant odors.  They contain a number of different chemical agents such as fragrances, aerosol propellants, and solvents such as mineral oil or 2-butoxyethanol and other glycol ethers. These products "deodorize" smelly areas by spraying chemical-based fragrances into

---

[3] http://www.wsj.com/articles/SB10001424052748704076804576180683371307932.
[4] http://www.statista.com/statistics/275375/us-households-most-used-brands-of-air-freshener-sprays-and-room-deodorizers/ (last accessed 8/7/17).

the air. However, this will only cover up odors and does not eliminate them. In fact, these solutions can even cause allergic or asthmatic reactions in those with sensitivities to the chemicals that have been introduced into an indoor environment.

27.     Thus, air fresheners do not address the root of the problem—the odor itself. Odors are caused by one or more volatilized chemical compounds that humans or other animals sense through olfaction. Odorous molecules act as a chemical stimulus; bringing awareness of the presence of airborne chemicals. Bacteria, allergens, dust mites, and other volatile organic compounds linger in the air and do not dissipate as a result of spraying air fresheners. At best, air freshener fragrances mix with noxious odor micro-particles to overwhelm/cover up problematic odors in human perception but fail to remove from the air the actual airborne particulates that give rise to odors.

28.     Only air purifiers can effectively remove airborne particulates and eliminate odors in the household. Unlike air fresheners, air purifiers actually remove odor inducing agents and other hazardous particles.

**Air Wick® Aerosol Sprays**

29.     Defendant's Air Wick® line of products includes scented oils, candles, scented wax melts, and aerosol air fresheners.

30.     Competing manufacturers of aerosol air fresheners acknowledge their limitations and do not promise more than they can deliver.  Rather than claiming to eliminate odors, they emphasize the pleasantness of their fragrances, implicitly acknowledging that they merely mask odors.  For example, Method® air freshener only promises to "fill your room with one of our nature-inspired scents."[5]  Pier 1 Imports® Citrus Cilantro room spray only offers a "lingering

---

[5] http://methodhome.com/products/air-refresher-beach-sage-2-2/ (last accessed 8/7/17).

scent of lemon, lime and grapefruit mixed with fragrant cilantro, basil and rosemary."[6] And Fornasetti flora-scented room spray only claims to "[f]ill your home with the beautifully luxurious Flora aroma from this natural room spray."[7] These are all accurate characterizations of what air fresheners actually do.

31.    Defendant RECKIT BENCKISER, however, makes the much stronger claim that its Air Wick® air spray actually "eliminates odors." This boast is prominently displayed on Air Wick® product labels, on Defendant's website, and wherever the Products are advertised.

32.    Defendant's representations are false, misleading and deceptive, however, because its Products have no odor-eliminating capabilities.

33.    The patents involved in the manufacture of Air Wick® products were thoroughly reviewed by expert chemist Steve Lerman of SIL Consulting. *See* **EXHIBIT B**. Mr. Lerman arrived at the following conclusions:

    a.    "There is no indication that the Air Wick product in this case has any deodorizing capability when used as directed as an air freshener."
    b.    "Any odor activity exhibited by this product appears to be limited solely to odor masking due to the presence of fragrances in the product."
    c.    "We do not see any validity to Air Wick's claim that their product eliminates odors."

34.    The meaning of "eliminates" must be taken at face value. In determining the meaning of the statements challenged herein, a court may reference dictionary definitions. *See Am. Italian Pasta Co. v. New World Pasta Co*., 371 F.3d 387, 391 (8th Cir. 2004) (referencing a dictionary definition of "favorite"). The Compact Oxford English Dictionary provides that the

---

[6] http://www.pier1.com/citrus-cilantro%C2%AE-room-spray/3051569.html?utm_source=Google&utm_medium=PLA&utm_campaign=google_pla&s_cid=pla0000003&gclid=CjwKEAjwudW9BRDcrd30kovf8GkSJAB3hTxFZgEaxPILImDaWTUC7tTuT1EbRZj9ub13ay3cnTdzMxoCvkbw_wcB&gclsrc=aw.ds (last accessed 8/7/17).
[7] https://us.amara.com/products/scented-room-spray-flora (last accessed 8/7/17).

word "eliminate" means "[t]o expel, exclude, remove, get rid of." [8] The American Heritage Dictionary provides that the word "eliminate" means "to wipe out someone or something, especially by using drastic methods such as banishment or execution." [9] Thus, the word "eliminate" denotes a complete removal such that the word "complete" is unnecessary and repetitive. [10]

35.     "Eliminates odors" cannot be plausibly interpreted as just another way of referring to the introduction of pleasant fragrances that only mask odors.  The front labels of the Products all state "4 in 1," thus promising consumers <u>four</u> distinct benefits.   These are: 1) "PREMIUM FRAGRANCE," 2) "ELIMINATES ODORS," 3) "LASTS UP TO 1 HOUR," and 4) "ACTS IN SECONDS."  Below is a picture of the Product label:



36.     Thus, the "eliminates odors" benefit is represented to consumers as something distinct from, and in addition to, the "premium fragrance" benefit.  So "eliminates odors" cannot be construed as just a synonym for the fragrances introduced by the spray.  Were it just another term for the odor-masking effects of the fragrances, Defendant would be promising consumers

---

[8] The Compact Oxford English Dictionary 141 (2d ed. 1989).
[9] The American Heritage Dictionary 580 (4th ed. 2000).

<u>three</u> distinct benefits, not the four that it actually advertises. Defendant thus stands convicted by logic alone, because *"eliminates odors" cannot be true unless "4 in 1" is false,* and vice versa.

**Defendant's Fraud Was Material, Reliance-Inducing, And Would Deceive A Reasonable Consumer**

37. Defendant's deceptive representations are material because reasonable consumers care that a product actually eliminates odors rather than merely masking them with pleasant fragrances. In addition to creating an unpleasant environment, noxious odors are often accompanied by airborne health hazards and allergens, including, but not limited to, pet dander, smoke particles, mold spores, and bacteria. These are not eliminated by pleasant fragrances, which only mask their effects and may result in significant health risks in their own right.

38. This is a source of significant consumer concern. There is abundant evidence that American consumers are dissatisfied with air fresheners that merely mask odors and prefer products that actually eliminate them.[11] It is therefore unsurprising that Defendant wishes to misrepresent its Products to consumers as falling into the latter category.

39. Given that Defendant goes out of its way to misrepresent odor elimination as a distinct benefit of its Products, Plaintiff's and other Class members' reliance upon Defendant's misleading and deceptive representations may be presumed. The materiality of those misrepresentations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Classes.

40. The presence of the "eliminates odors" statement on the Products' label is false, misleading and likely to deceive a reasonable consumer. Reasonable consumers, such as Plaintiff

---

[10] The Third Circuit addressed a similar factual scenario when an advertisement stated that a product could "eliminate" a medical condition. *Belmont Labs., Inc. v. Fed. Trade Comm'n*, 103 F.2d 538, 540-41 (3d Cir. 1939). When the evidence demonstrated that the product could only "alleviate" the condition for a period of time, the advertisement was found to be false. *Id.*
[11] *See* http://cleanmyspace.com/the-truth-about-air-fresheners/ (last accessed 8/7/17).

and Class members, rationally expect that a product which claims to eliminate odors will perform as promised and do more than simply mask unpleasant odors.

41.     Reasonable consumers (including Plaintiff and the Classes) must and do rely on manufacturers of household products such as Defendant to honestly disclose their products' capabilities and limitations, and companies such as Defendant intend and know that consumers rely upon labeling statements in making their purchasing decisions. Such reliance by consumers is reasonable given that companies are legally prohibited from engaging in deceptive acts or practices in the conduct of any business, trade, or commerce.  Illinois has placed requirements on companies that are designed to ensure that the claims they make about their products are truthful and accurate.

42.               Plaintiff and the Class relied on Defendant's representations because they would not have purchased its Products had they known that they could not function as promised.  At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products were deceptively labeled, and would not have purchased the Products had they known they were incapable of eliminating odors.  Defendant intended that Plaintiff and the Classes rely on its misrepresentations.

**Defendant Knew That Its Representations Were Deceptive**

43.     Defendant knew that it made the "eliminates odors" representation about its Air Wick® aerosol sprays, as the statement appears on the Products' packaging. Defendant also knew that the claim was false and misleading, because the Products cannot eliminate odor and only mask it.  Upon information and belief, Defendant retained expert chemists, scientists, regulatory compliance personnel, and attorneys, and thus had the ability to know, and did know, that Air Wick® aerosol sprays are incapable of eliminating odors.

44.     Defendant's awareness of the Products' limitations is shown by its response to one of the FAQs on the Product website, where it explains that "[f]ragrance longevity depends on how much product is sprayed, the area's ventilation, and the existence of odor in the air prior to using the product"[12] *See* **EXHIBIT A**.  Obviously, the Products do not eliminate prior odors if prior odors can reduce the longevity of their effects.

45.     Defendant's guilty intent is further proven by the marketing of another one of its products, Lysol®, which also claims to eliminate odors.  The back label of Defendant's Lysol® neutra air® sanitizing spray reads: "This product cleans your air of bacteria & their odors. **Unlike other air fresheners that only mask odors, this product eliminates tough odors** such as smoke, food, mold, mildew, bathroom, and pet odors. …Air so clean you can smell the freshness." (emphasis added). Below is a photo:



46.     Defendant's <u>own words</u> prove that it recognizes the distinction between actually eliminating odors and merely masking them, as it promotes this distinction in marketing its

---

[12] http://www.airwick.us/faqs/room-spray-faqs/#faq-3 (last accessed 8/7/17).

Lysol® product.  Lysol® lives up to its promise by actually destroying the air borne particles that cause odors.  Lysol® eliminates odors by "denaturing proteins," which "destroys the tertiary structure that gives the protein its three-dimensional shape," thereby killing the cell.[13]  Defendant therefore knows what is required to actually eliminate odors.  Yet Defendant represents its Air Wick® room sprays as having the same capabilities as Lysol® when it knows that they lack these capabilities.  Defendant is correct that its Lysol® is different from "other air fresheners that only mask odors."  Unfortunately for Defendant, one of those air fresheners happens to be its own.

**Plaintiff Was Injured As A Result of Defendant's Misrepresentations**

47.     Defendant's Product labeling is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic product packaging practice.  As a result of Defendant's misrepresentations, Plaintiff and thousands of others throughout the United States purchased the Products.

48.     Plaintiff was attracted to Air Wick® aerosol sprays because she preferred to use air fresheners capable of eliminating unpleasant odors. Plaintiff believed that the Products would perform as promised by Defendant's packaging and marketing campaign. As a result, the Air Wick® aerosol spray, with its deceptive claims on its label, held little or no value to Plaintiff, who were seeking to eliminate odors and not just mask them.

49.     Plaintiff and the Class have been damaged by Defendant's deceptive and unfair conduct because they were induced to purchase a Product with false and deceptive labeling that held little or no value for them, given that the Product could not perform its advertised purpose. They were thus deprived of the benefit of their bargain, receiving a product whose value was less than had been warranted by Defendant.

---

[13] https://www.reference.com/science/lysol-kill-bacteria-2ce58c185635fe6# (last accessed 8/7/17).

15

50. Defendant's marketing of Lysol® is an acknowledgment that products that merely mask odors have less value than products that actually eliminate them. Odor-elimination would not otherwise be a selling point for Lysol®.

## CLASS ACTION ALLEGATIONS

51. Plaintiff seeks relief in her individual capacity and as representative of all others similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seek certification of the following Classes:

    i.    The Nationwide Class
        All persons who have made retail purchases in the United States of Air Wick® aerosol sprays with "eliminates odors" claims on the front labels during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

    ii.    The Illinois Class
        All persons who have made retail purchases in Illinois of Air Wick® aerosol sprays with "eliminates odors" claims on the front labels during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

    (collectively, "the Classes")

52. Excluded from the Classes are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

53. Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

54. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

55.     **Numerosity:** Each Class is so numerous that individual joinder of all Class members is impracticable. The precise number of members of the Classes is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendant's comprehensive nationwide distribution and sales network. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

56.     **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes. All members of the Classes were exposed to Defendant's deceptive and misleading claim that Air Wick® aerosol spray "eliminates odors" because that claim was on the front of every Product canister. Furthermore, common questions of law or fact include:

a.  whether Defendant engaged in a marketing practice intended to deceive consumers;

b.  whether Defendant deprived Plaintiff and Class members of the benefit of the bargain because the Product purchased had less value than what Defendant warranted;

c.  whether Defendant deprived Plaintiff and Class members of the benefit of the bargain because the Product they purchased could not perform its advertised function and thus held little or no value for them;

d.  whether Defendant caused Plaintiff and Class members to purchase a substance that was other than what was represented by Defendant;

e.  whether Defendant caused Plaintiff and the other members of the Classes to purchase Products that are incapable of eliminating odors;

     f.   whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

     g.   whether Defendant should be enjoined from representing that Air Wick® aerosol spray "eliminates odors."

57.    Defendant engaged in a common course of conduct in contravention of the laws that Plaintiff seek to enforce individually and on behalf of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and importance, to the numerous common questions that predominate in this action. Moreover, the common questions will yield common answers.

58.    **Typicality:** Plaintiff's claims are typical of those of other Class members because Plaintiff and other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff purchased Defendant's Product and sustained similar injuries arising out of Defendant's conduct in violation of Illinois law as well as of substantively similar consumer protection laws of the other 49 states and the District of Columbia. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in common injury to all members of the Classes. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of other Class members are based on the same legal theories.

59.    **Adequacy:** Plaintiff will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiff

understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Classes. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Classes. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the Classes. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the Classes.

60.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if they could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the Class members' claims, this class action will be easily managed by the Court.

61.     **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

19

62.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are also met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

63.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

64.     Further and in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *et seq*.)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent the Illinois Consumer Fraud and Deceptive Practices Act does not reach the claims of out-of-state Class members or, in the alternative, the Illinois Class)**

65.     Plaintiff SIMS realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

66.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") prohibits as a deceptive act or practice "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2.

67.     815 ILCS 505/2 also provides that this includes "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" as described by the Illinois Uniform Deceptive Trade Practices Act. 815 ILCS 510/2.

68.     The Act provides that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." A court has the discretion to "award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a). A court may also "grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c).

69.     A Plaintiff must allege five elements in order to state a claim under the Act: 1) a deceptive act or unfair practice occurred, 2) the defendant intended for plaintiff to rely on the deception, 3) the deception occurred in the course of conduct involving trade or commerce, 4) the plaintiff sustained actual damages, and 5) the damages were proximately caused by the defendant's deception. *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

70.     Plaintiff SIMS's claim satisfies element 1 of the Act because Defendant engaged in a deceptive act when it represented that the Products, with no odor eliminating capability, would eliminate odors.

71.     Plaintiff SIMS's claim satisfies element 2 of the Act because Defendant intended that she believe that Air Wick® air spray eliminates odors and then purchase the Product in reliance on this belief. After all, the claim is prominently displayed on the front label for a reason.

72.     Plaintiff SIMS's claim satisfies element 3 of the Act because the deception occurred in the context of a commercial transaction.  Plaintiff purchased the Products for $.99 a canister at a store.

73.     Plaintiff SIMS's claim satisfies element 4 of the Act because Plaintiff SIMS sustained actual damages when she paid money for a product that held no value for her, or substantially less value than the purchase price.  The Product was represented as capable of eliminating odors.  But it could not eliminate odors, and eliminating odors was the purpose for which she purchased it and the purpose for which it was advertised.  Plaintiff SIMS was thus deprived of the benefit of her bargain and suffered an actual loss of up to $0.99 for each of the two canisters of Product she purchased.

74.     *See Su Yeun Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010) ("In the less typical case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'") (quoting *Mulligan v. QVC, Inc*., 888 N.E.2d 1190, 1197-98 (Ill. App. Ct. 2008)).

75.     Plaintiff SIMS's claim satisfies element 5 of the Act because Defendant's deception was the proximate cause of her damages.  Plaintiff SIMS would not have purchased the Product had she known that it could not eliminate odors.  Thus, it was only Defendant's representation that it could eliminate odors that caused her to purchase the Products and suffer the resultant injury.

76.     Accordingly, Plaintiff SIMS brings this claim under the Act on behalf of herself and the other members of the Illinois Class and requests: 1) monetary damages in the amount of a full refund of the purchase price, 2) punitive damages, 3) restitution for monies wrongfully obtained, 4) disgorgement of ill-gotten revenues, 4) declaratory relief, 5) injunctive relief

enjoining Defendant from disseminating that its Product "eliminates odors," 6) reasonable attorneys' fees, and 7) any other relief deemed appropriate by the Court.

## COUNT II

### COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent Illinois common law does not reach the claims of out-of-state Class members or, in the alternative, the Illinois Class)**

77.     Plaintiff SIMS realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

78.     Defendant made a false statement of material fact when it represented that the Products could eliminate odors.

79.     Defendant knew that this representation was false.

80.     Defendant intended that Plaintiff SIMS and the Class rely on this representation and they did rely on it.  Had Defendant accurately represented the Products' actual capabilities, Plaintiff and the Class would not have purchased them.

81.     Plaintiff and the Classes suffered damages as the result of such reliance.

82.     Accordingly, Defendant is liable to Plaintiff and the Class for common law fraud

## COUNT III

### BREACH OF EXPRESS WARRANTIES

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar express warranty laws of other states and the District of Columbia to the extent Illinois express warranty laws do not reach the claims of out-of-state Class members or, in the alternative, the Illinois Class)**

83.     Plaintiff SIMS realleges and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

84. Defendant provided Plaintiff and other Class members with the written express warranty that its Products could eliminate odors. This "eliminates odors" claim is an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise, which was what induced Plaintiff' and the Classes' purchasing decisions.

85. Defendant breached the terms of this express warranty by not providing Products with the nature and quality it had warranted on the Products' labels and on its website.

86. As a proximate result of Defendant's breach of warranties, Plaintiff and Class members have suffered damages in an amount to be determined by the Court and/or jury. They purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain because they spent money on products that did not provide what had been promised and held no value for them.

87. The Breach of Express Warranties pre-suit notice requirement does not apply to Plaintiff SIMS's Illinois claim if "the seller has actual knowledge of the defect of the particular product." *In re McDonald's French Fries Litig*., 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). As alleged herein, Defendant was aware that its Products could not perform as advertised. Likewise, the Breach of Express Warranties privity requirement does not apply to Plaintiff SIMS's Illinois claim because Defendant expressly warranted its goods to her and the Illinois Class (through the Products' labels) and this warranty was the basis of the bargain and was relied upon by Plaintiff SIMS and the Illinois Class. *See In re McDonald's French Fries Litig*., 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (agreeing with Plaintiff that "they are exempt from alleging privity because McDonald's expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by Plaintiff.").

24

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

     a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of either the Nationwide or the Illinois Class;

     b.  An Order appointing the undersigned attorney as class counsel;

     c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

     d.  All recoverable compensatory and other damages sustained by Plaintiff and the Classes, in the maximum amount permitted by applicable law;

     e.  An order requiring Defendant to (i) immediately cease its deceptive business conduct as set forth in this Complaint; (ii) engage in a corrective advertising campaign; and (iii) reimburse Plaintiff and all Class members the amounts paid for the Product;

     f.  Statutory pre-judgment and post-judgment interest on any amounts;

     g.  Payment of reasonable attorneys' fees and costs; and

     h.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: September 26, 2018

Respectfully submitted,

By: _____/s/ C.K. Lee_____
       C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (#2903557)
73 West Monroe Street
Chicago, IL 60603
Tel.: 212-465-1188
Fax: 212-465-1181
Email: cklee@leelitigation.com
*Attorneys for Plaintiff and the Class*